IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| EMERGENCY STAFFING SOLUTIONS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:13cv309 (Judge Mazzant) |
| CAH ACQUISITION COMPANY #10, LLC, ET AL, | § § § | |
| Defendant. | § § | |

### PLAINTIFF'S FOURTH AMENDED COMPLAINT

COMES NOW Plaintiff Emergency Staffing Solutions, Inc. ("Plaintiff" or "ESS") through its counsel, and, in accordance with the Order of this Court, for its Fourth Amended Complaint against Defendant CAH Acquisition Company #1, LLC d/b/a Washington County Hospital ("CAH-Washington"), Defendant CAH Acquisition Company #10, LLC d/b/a Yadkin Valley Community Hospital ("CAH-Yadkin"), Defendant CAH Acquisition Company #16, LLC d/b/a Haskell County Community Hospital ("CAH-Haskell"), and Defendant HMC/CAH, Inc. ("HMC/CAH") (collectively, "Defendants"). ESS respectfully alleges and states as follows:

### I.
### INTRODUCTION

1. This action arises from Defendants CAH-Washington and CAH-Yadkin's breach of contract and fraudulent inducement and Defendant CAH-Haskell's breach of contract. ESS seeks monetary damages and an award of its attorneys' fees against each of the Defendants.

### II.
### PARTIES

2. Plaintiff Emergency Staffing Solutions, Inc. is a Texas corporation.

3. Defendant CAH Acquisition Company #1, LLC d/b/a Washington County Hospital is a Delaware limited liability company. Defendant CAH-Washington has appeared in this action.

4. Defendant CAH Acquisition Company 10, LLC d/b/a Yadkin Valley Community Hospital is a Delaware limited liability company. Defendant CAH-Yadkin has appeared in this action.

5. Defendant CAH Acquisition Company #16, LLC d/b/a Haskell County Community Hospital is a Delaware limited liability company. Defendant CAH-Haskell has appeared in this action.

6. Defendant HMC/CAH Consolidated, Inc. (HMC/CAH) is a Delaware corporation. Defendant has not appeared in this action. Defendant may be served with process by delivering a citation and a copy of this complaint to its registered agent, Corporation Service Company, at 2711 Centerville Rd Suite 400, Wilmington, DE 19808.

## III.
### JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this district.

## IV.
### FACTUAL BACKGROUND

9. ESS specializes in the business of contracting with hospitals to provide, among other things, emergency department billing and physician staffing services.

10. ESS's compensation is based on two inversely related factors: collections on medical services provided to patients, and a subsidy charged to the contracting hospital. The more ESS can expect to be paid in collections, the lower the subsidy charged to the hospital can be, and vice versa. ESS calculates expected collections based on projections of a number of variables, including but not limited to the number of patients to be seen at each of the Defendants' facilities, a breakdown of the method of payment to be used by those patients, and a breakdown of the CPT codes used (the "Compensation Variables"). The Compensation Variables are generally provided to ESS by the contracting hospital prior to contract formation.

**Facts Related to CAH-Washington**

11. On or about June 1, 2012, ESS and CAH-Washington entered into a contract whereby ESS agreed to provide emergency department billing and physician staffing services to CAH-Washington in exchange for CAH-Washington's agreement to compensate ESS for those services (the "CAH-Washington Agreement").

12. In an apparent effort to reduce the hospital subsidy, CAH-Washington grossly misrepresented the Compensation Variables to ESS. On or about February 29, 2012 and April 10, 2012, Harley Smith, CAH-Washington's CEO, knowingly and intentionally misrepresented to ESS, in writing, the following Compensation Variables: (1) the volume of patients that pass through CAH-Washington's facility, and (2) the breakdown of the method of payment used by those patients. The charts below reflect the misrepresentations made by CAH-Washington. The chart on the left shows the relevant Compensation Variables as represented by CAH-Washington, while the chart on the right shows the actual Compensation Variables and the respective difference between the actual data and the representations made.

| WCH Representations | | Actual Figures | | Difference |
|---|---|---|---|---|
| **Volume** | | **Volume** | | |

| Patient Visits | 6365/year | | Patient Visits | 6114/year | -251/year |
|---|---|---|---|---|---|
| **Payer Mix** | | | **Payer Mix** | | |
| Medicare | 54.00% | | Medicare | 23.20% | -30.80% |
| Medicaid | 14.30% | | Medicaid | 33.10% | 18.80% |
| Self-Pay | 8.80% | | Self-Pay | 25.30% | 16.50% |
| BC/BS | 14.20% | | BC/BS | 9.40% | -4.80% |
| Workers Compensation | 0.80% | | Workers Compensation | 1.90% | 1.10% |
| Commercial | 5.60% | | Commercial | 1.70% | -3.90% |

13. The misrepresentations identified in Paragraphs 12 and the charts above occurred via email correspondence sent from Plymouth, North Carolina to ESS's offices in Texas on April 10, 2012.

14. ESS relied on the misrepresented Compensation Variables to calculate the amount of money that ESS could realistically expect to collect per patient, as well as the overall volume of Emergency Department patients. An accurate representation of the expected payer mix is important to ESS's billing practice because expected collection revenue from Medicare, Medicaid and self-pay patients is substantially lower than expected collection revenue from commercial insurance and Blue Cross/Blue Shield patients. These misrepresentations caused ESS to overestimate the revenue collections per patient by a statistically significant amount. The overestimation of expected collections caused by CAH-Washington's misrepresentations resulted in ESS charging an unreasonably low subsidy to CAH-Washington in the amount of $51,502.00 per month for Emergency Department Services. Due to the unexpectedly low actual collection rate, and an insufficient subsidy, ESS has been operating at a loss under the CAH-Washington Agreement.

15. ESS relied on CAH-Washington's misrepresentations when negotiating the compensation to be paid under the CAH-Washington Agreement and, as a result, ESS agreed to

a compensation amount that did not properly reflect the actual number of patients seen at CAH-Washington's facility, the breakdown of the method of payment of those patients, or a reasonable subsidy.

16. ESS complied with its obligations under the CAH-Washington Agreement and incurred significant costs in doing so. Despite ESS's faithful performance of its contractual obligations, CAH-Washington refuses to comply with its financial obligations under the CAH-Washington Agreement.

17. On May 16, 2013, CAH-Washington unilaterally terminated and thereby repudiated the CAH-Washington Agreement, without just excuse, by absolutely and unconditionally refusing to perform the CAH-Washington Agreement.

18. CAH-Washington's repudiation of the CAH-Washington Agreement caused ESS to incur monetary damages, including the lost value of the expected performance of the CAH-Washington Agreement.

19. In addition, due to CAH-Washington's misrepresentations of the Compensation Variables, ESS has incurred additional losses, including lost profits, resulting from CAH-Washington's fraudulent inducement.

20. ESS now brings this lawsuit and seeks monetary damages resulting from CAH-Washington's breach of the CAH-Washington Agreement and fraudulent inducement.

**Facts Related to CAH-Yadkin**

21. On or about August 1, 2012, ESS and CAH-Yadkin entered into a contract whereby ESS agreed to provide emergency department billing and physician staffing services to CAH-Yadkin in exchange for CAH-Yadkin's agreement to compensate ESS for those services (the "CAH-Yadkin Agreement").

22.     In an apparent effort to reduce the hospital subsidy, CAH-Yadkin grossly misrepresented the Compensation Variables to ESS.  On or about February 28, 2012, Fred Soule, CAH-Yadkin's CEO, knowingly and intentionally misrepresented to ESS, in writing, the following Compensation Variables: (1) the volume of patients that pass through CAH-Yadkin's facility, (2) the breakdown of the method of payment used by those patients, and (3) the breakdown of CPT codes used.  The chart on the left shows the relevant Compensation Variables as represented by CAH-Yadkin, while the chart on the right shows the actual Compensation Variables and the respective difference between the actual data and the representations made.

| YVCH Representations | | Actual Figures | | Difference |
| --- | --- | --- | --- | --- |
| **Volume** | | **Volume** | | |
| Patient Visits | 6-7000/year | Patient Visits | 5712/year | -288/year |
| **Payer Mix** | | **Payer Mix** | | |
| Medicare | 14.80% | Medicare | 19.30% | 4.50% |
| Medicaid | 30.70% | Medicaid | 34.46% | 3.76% |
| Self-Pay | 27.30% | Self-Pay | 29.61% | 2.31% |
| BC/BS | 11.70% | BC/BS | 7.16% | -4.54% |
| Workers Compensation | 1.50% | Workers Compensation | 2.60% | 1.10% |
| Commercial | 3.50% | Commercial | 4.84% | 1.34% |
| **Acuity (CPT Codes)** | | **Acuity (CPT Codes)** | | |
| 99281 | 1.60% | 99281 | 0.00% | -1.60% |
| 99282 | 10.70% | 99282 | 10.02% | -0.68% |
| 99283 | 69.00% | 99283 | 63.19% | -5.81% |
| 99284 | 15.50% | 99284 | 23.31% | 7.81% |
| 99285 | 3.00% | 99285 | 3.27% | 0.27% |
| 99291 | 0.20% | 99291 | 0.20% | 0.00% |

23.     The misrepresentations identified in Paragraphs 22 occurred via email correspondence sent from Yadkinville, North Carolina to ESS's offices in Texas on February 28, 2012.

24.     ESS relied on the misrepresented Compensation Variables to calculate the amount

of money that ESS could realistically expect to collect per patient, as well as the overall volume of Emergency Department patients. An accurate representation of the expected payer mix is important to ESS's billing practice, because expected collection revenue from Medicare, Medicaid and self-pay patients is substantially lower than expected collection revenue from commercial insurance and Blue Cross/Blue Shield patients. Similarly, some billing codes can be expected to yield greater expected collection revenue than others. CAH-Yadkin misrepresented these Compensation Variables to ESS, as shown by the charts above. These misrepresentations caused ESS to overestimate the revenue collections per patient by a statistically significant amount. The overestimation of expected collections caused by CAH-Yadkin's misrepresentations resulted in ESS charging an unreasonably low subsidy to CAH-Yadkin in the amount of $56,298.00 per month for Emergency Department Services. Due to the unexpectedly low actual collection rate, and an insufficient subsidy, ESS has been operating at a loss under the CAH-Yadkin Agreement.

25. ESS relied on CAH-Yadkin's misrepresentations when negotiating the compensation to be paid under the CAH-Yadkin Agreement and, as a result, ESS agreed to a compensation amount that did not properly reflect the actual number of patients seen at CAH-Yadkin's facility, the breakdown of the method of payment of those patients, the breakdown of CPT codes used, or a reasonable subsidy.

26. ESS complied with its obligations under the CAH-Yadkin Agreement and incurred significant costs in doing so. Despite ESS's faithful performance of its contractual obligations, CAH-Yadkin refuses to comply with its financial obligations under the CAH-Yadkin Agreement.

27. On May 16, 2013, CAH-Yadkin unilaterally terminated and thereby repudiated

the CAH-Yadkin Agreement, without just excuse, by absolutely and unconditionally refusing to perform the CAH-Yadkin Agreement.

28. CAH-Yadkin's repudiation of the CAH-Yadkin Agreement caused ESS to incur monetary damages, including the lost value of the expected performance of the CAH-Yadkin Agreement.

29. In addition, due to CAH-Yadkin's misrepresentations of the Compensation Variables, ESS has incurred additional losses, including lost profits, resulting from CAH-Yadkin's fraudulent inducement.

30. ESS now brings this lawsuit and seeks monetary damages resulting from CAH-Yadkin's breach of the CAH-Yadkin Agreement and fraudulent inducement.

**Facts Related to CAH-Haskell**

31. On or about June 1, 2012, ESS and CAH-Haskell entered into a contract whereby ESS agreed to provide emergency department billing and physician staffing services to CAH-Haskell in exchange for CAH-Haskell's agreement to compensate ESS for those services (the "CAH-Haskell Agreement").

32. ESS has complied with its obligations under the CAH-Haskell Agreement and has incurred significant costs in doing so. Despite ESS's faithful performance of its contractual obligations, CAH-Haskell refuses to comply with its financial obligations under the CAH-Haskell Agreement.

33. More specifically, CAH-Haskell has failed to pay ESS's invoices in full within ten days of receipt of those invoices as required under the CAH-Haskell Agreement. As such, substantial sums remain due and outstanding under the CAH-Haskell Agreement and finance charges continue to accrue on those sums.

34. ESS now brings this lawsuit and seeks monetary damages resulting from CAH-Haskell's breach of the CAH-Haskell Agreement.

**Facts Related to HMC/CAH (Parent Company of CAH-Haskell, CAH-Yadkin, and CAH-Washington)**

35. ESS contracted with CAH-Haskell, CAH-Yadkin, and CAH-Washington (collectively the "Subsidiaries") to provide emergency department billing and physician staffing services in exchange for compensation.

36. By Defendants' own admission, the Subsidiaries are part of a system of hospitals that are owned and operated by HMC/CAH.

37. HMC/CAH is the sole limited liability company member of the Subsidiaries, and thus, wholly owns all the Subsidiaries.

38. Defendants admit that the major operations of CAH-Washington and CAH-Yadkin, including accounting and negotiating contracts, are conducted by HMC/CAH. Upon information and belief, CAH-Haskell's major operations are also primarily conducted by HMC/CAH.

39. Defendants also state that it was HMC/CAH that determined the need for a new provider of emergency department billing and physician staffing services at CAH-Washington and CAH-Yadkin. Further, it was HMC/CAH that actively searched for a new provider. In fact, Defendants admit that HMC/CAH's former CEO, Gordon Docking, initiated contact and negotiated directly with ESS. HMC/CAH also provided necessary information and statistics related to the Compensation Variables upon which ESS ultimately relied in negotiating the monthly subsidy under the related contracts. ESS maintained direct contact with HMC/CAH throughout the performance of the contracts at issue. Likewise, HMC/CAH remained in close, continuous contact with CAH-Washington and CAH-Yadkin. Specifically, Defendants admit

that HMC/CAH participated in ALL discussions and decisions about ESS's performance of the contracts in question. Upon information and belief, HMC/CAH was similarly involved in the operations and decision-making related to the CAH-Haskell Agreement.

40. Most importantly, HMC/CAH "was solely responsible for assessing, negotiating and signing the agreement, discussing and paying monies to ESS . . ." for the CAH-Washington Agreement and the CAH-Yadkin Agreement. Upon information and belief, HMC/CAH was also solely responsible for duties detailed above for ESS's for the CAH-Haskell Agreement. Further, Defendants admit that most, if not all, of the documents applicable to this case are in the custody or control of HMC/CAH. This suggests that HMC/CAH, as the parent company, was controlling and handling all of the contracts of the Subsidiaries.

41. Based on the corporate structure of HMC/CAH and the Subsidiaries, it is apparent that many of the officers of HMC/CAH work with both HMC/CAH and the Subsidiaries, thus blurring the corporate fiction. Further, given the fact that HMC/CAH handles accounting for the Subsidiaries and is aware of payments made to ESS, it appears that the Subsidiaries' revenue flows through HMC/CAH and that HMC/CAH likely pays the salaries of the Subsidiaries' employees.

42. ESS now brings this lawsuit and seeks monetary damages resulting from HMC/CAH's actions as the parent company that is operating with the Subsidiaries as a single business enterprise.

## V.
### CLAIMS FOR RELIEF

**Cause of Action 1: Breach of Contract against CAH-Washington, CAH-Yadkin and CAH Haskell**

43. ESS hereby incorporates the allegations contained in the forgoing paragraphs as if restated in full herein.

44. Defendants each entered into agreements, individually, the CAH-Washington Agreement, the CAH-Yadkin Agreement and the CAH-Haskell Agreement (collectively, the "Agreements") whereby they agreed to pay ESS for services provided under each of their Agreements.

45. Defendants breached the Agreements by failing to timely pay ESS for services provided.

46. Defendants CAH-Washington and CAH-Yadkin also breached their Agreements by unilaterally terminating and thereby repudiating their Agreements.

47. As a result of Defendants' breach of the Agreements, ESS has been damaged in an amount to be determined at trial, but in excess of the minimum jurisdictional limits of this Court.

**Cause of Action 2:** **Fraudulent Inducement against CAH-Washington and CAH-Yadkin**

48. ESS hereby incorporates the allegations contained in the forgoing paragraphs as if restated in full herein.

49. In negotiating the compensation to be paid under the CAH-Washington Agreement, Fred Soule, CAH-Washington's CEO, made certain fraudulent representations to ESS, in writing, regarding the Compensation Variables.

50. In negotiating the compensation to be paid under the CAH-Yadkin Agreement, Harley Smith, CAH-Yadkin's CEO, made certain fraudulent representations to ESS, in writing, regarding the Compensation Variables.

51. The representations made by CAH-Washington and CAH-Yadkin were grossly exaggerated and false.

52. When CAH-Washington and CAH-Yadkin made the representations, they knew they were false, or made the representations recklessly without knowledge of their truth.

53. Further, CAH-Washington and CAH-Yadkin made the representations with the intent that ESS rely on them in negotiating the compensation to be paid under the Agreements.

54. ESS did rely on CAH-Washington and CAH-Yadkin's representations and agreed to deficient compensation amounts, thus resulting in damages to ESS in an amount to be determined at trial but in excess of the minimum jurisdictional limits of this Court. ESS has also incurred damages in the form of lost profits.

**Cause of Action 3:** **Attorneys' Fees against CAH-Washington, CAH-Yadkin and CAH Haskell**

55. ESS hereby incorporates the allegations contained in the forgoing paragraphs as if restated in full herein.

56. As a result of the allegations set forth above, ESS has been forced to retain legal counsel to represent it in this matter and has agreed to pay its counsel reasonable and necessary attorneys' fees. ESS is entitled to recover its reasonable attorney's fees incurred with this action as allowed under applicable law. ESS also seeks recovery of its costs of court.

**Cause of Action 4:** **Piercing the veil against HMC/CAH under the Single Business Enterprise/Instrumentality Theory to hold HMC/CAH liable for the actions of its wholly owned subsidiaries CAH-Washington, CAH-Yadkin, and CAH-Haskell**

57. ESS hereby incorporates the allegations contained in the forgoing paragraphs as if restated in full herein.

58. ESS contracted with the Subsidiaries to provide emergency department billing and physician staffing services in exchange for compensation.

59. By Defendants' own admission, the Subsidiaries are part of a system of hospitals that are owned and operated by HMC/CAH. Moreover, HMC/CAH is the sole limited liability

company member of the Subsidiaries, and thus, wholly owns all the Subsidiaries.

60. Defendants admit that the major operations of CAH-Washington and CAH-Yadkin are conducted by HMC/CAH. These major operations include handling the accounting of the Subsidiaries and negotiating contracts on behalf of the Subsidiaries. Upon information and belief, CAH-Haskell's major operations are also primarily conducted by HMC/CAH.

61. HMC/CAH was so aware of the Subsidiaries' operations that it was able to determine the need for a new provider of emergency department billing and physician staffing services at CAH-Washington and CAH-Yadkin. Further, it was HMC/CAH that actively searched for a new provider. In fact, Defendants admit that HMC/CAH's former CEO, Gordon Docking, initiated contact and directly negotiated with ESS. HMC/CAH also provided necessary information and statistics related to the Compensation Variables upon which ESS ultimately relied in negotiating the monthly subsidy under the related contracts.

62. ESS maintained direct contact with HMC/CAH throughout the performance of the contract. Likewise, HMC/CAH remained in close, continuous contact with CAH-Washington and CAH-Yadkin. Specifically, Defendants admit that HMC/CAH participated in ALL <u>discussions</u> and <u>decisions</u> about ESS's performance of the contracts in question.

63. Most importantly, HMC/CAH "was solely responsible for assessing, negotiating and signing the agreement, discussing and paying monies to ESS . . ." for the CAH-Washington Agreement and the CAH-Yadkin Agreement. Upon information and belief, HMC/CAH was also solely responsible for duties detailed above for the CAH-Haskell Agreement. Further, Defendants admit that most, if not all, of the documents applicable to this case are in the custody or control of HMC/CAH. This suggests that HMC/CAH, as the parent company, was controlling and handling all of the contracts of the Subsidiaries. Presumably, the Subsidiaries needed

permission from HMC/CAH to enter into any contracts or make any major decisions, and the Subsidiaries likely followed the directions of HMC/CAH.

64. Based on the corporate structure of HMC/CAH and the Subsidiaries, it is apparent that many of the officers of HMC/CAH work with both HMC/CAH and the Subsidiaries, thus blurring the corporate fiction. Further, given the fact that HMC/CAH handles accounting for the Subsidiaries and is aware of payments made to ESS, it appears that the Subsidiaries' revenue flows through HMC/CAH and that HMC/CAH likely pays the salaries of the Subsidiaries' employees.

65. From the facts above, much of it admitted by Defendants, it is clear that CAH-Washington, CAH-Yadkin, and CAH-Haskell are all mere instrumentalities or alter egos of HMC/CAH. As such, HMC/CAH should be held liable for the above causes of action against its instrumentalities by piercing the corporate veil.

66. As a result of HMC/CAH's actions, ESS has been damaged in an amount to be determined at trial, but in excess of the minimum jurisdictional limits of this Court.

## VI.
### REQUEST FOR RELIEF

CONSIDERING THESE PREMISES, ESS respectfully requests that, upon final resolution of this matter, this Court enter a judgment against HMC/CAH, CAH-Washington, CAH-Yadkin and CAH-Haskell for the following relief:

(A) Actual monetary damages in an amount to be determined at trial, but in excess of the minimum jurisdictional limits of this Court;

(B) Monetary damages in the form of lost profits in an amount to be determined at trial, but in excess of the minimum jurisdictional limits of this Court;

(C) All attorneys' fees and costs of court;

(D) Any and all costs and reasonable attorneys' fees incurred in any and all related appeals and collateral actions, if any;

(E) Pre-judgment and post-judgment interest on all sums at the maximum rate allowed by law; and

(F) Such other and further relief to which this Court deems that ESS is justly entitled.

Respectfully submitted,

/s/ John M. Hafen_____
John M. Hafen
Texas State Bar No. 24057879
jmh@hanshawkennedy.com
Hastings L. Hanshaw
Texas State Bar No. 24012781
hlh@hanshawkennedy.com

**HANSHAW KENNEDY MARQUIS, PLLC**
1415 Legacy Drive, Suite 350
Frisco, Texas 75034
Telephone: (972) 731-6500
Telecopier: (972) 731-6555

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 29, 2014 all counsel of record were served with a copy of the forgoing PLAINTIFF'S FOURTH AMENDED COMPLAINT by the Court's CM/ECF system per Local Rule CV-5(a)(3)

DATE: September 29, 2014 /s/ John M. Hafen_____