IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| EMERGENCY STAFFING SOLUTIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  4:13 cv 309 |
| | ) | |
| CAH ACQUISITION COMPANY #10, LLC, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER TO PLAINTIFF'S FOURTH AMENDED
COMPLAINT ON BEHALF OF CAH ACQUISITION
COMPANIES #1, #10 and #16 AND
COUNTERCLAIMS**

Pursuant to Federal Rules of Civil Procedure 7(a) and 12(a)(1)(A), the

Defendants, CAH Acquisition Company #1, LLC, d/b/a Washington County Hospital

("Washington County"), CAH Acquisition Company #10, LLC, d/b/a Yadkin Valley

Community Hospital ("Yadkin"), and CAH Acquisition Company #16, LLC, d/b/a Haskell

County Community Hospital ("Haskell") (Washington County, Yadkin and Haskell collectively

referred to as the "Hospitals")  for their Answer to Plaintiff's Fourth Amended Complaint, state

and allege as follows:

1.       Paragraph 1 of Plaintiff's Fourth Amended Complaint states legal conclusions

which require neither an admission nor a denial by the Hospitals.  To the extent that paragraph 1

requires an answer; the Hospitals deny the allegations set forth in paragraph 1.

2.       In response to Paragraph 2 of Plaintiff's Fourth Amended Complaint, the

Hospitals admit that Emergency Staffing Solutions, Inc. ("ESS" or "Plaintiff") is a Plaintiff in

this action and that it is a Texas corporation.

3.      Washington County admits that it is a Delaware Limited Liability Company.  The remaining allegations set forth in paragraph 3 of Plaintiff's Fourth Amended Complaint states a legal conclusion which requires neither an admission nor a denial by Washington County.  To the extent the remaining allegations in paragraph 3 do not state a legal conclusion, Washington County denies the allegations.

4.      Yadkin admits that it is a Delaware Limited Liability Company.  The remaining allegations set forth in paragraph 4 of Plaintiff's Fourth Amended Complaint states a legal conclusion which requires neither an admission nor a denial by Yadkin.  To the extent the remaining allegations in paragraph 4 do not state a legal conclusion, Yadkin denies the allegations.

5.      Haskell admits that it is a Delaware Limited Liability Company.  The remaining allegations set forth in paragraph 5 of Plaintiff's Fourth Amended Complaint states a legal conclusion which requires neither an admission nor a denial by Haskell.  To the extent the remaining allegations in paragraph 5 do not state a legal conclusion, Haskell denies the allegations.

6.      The Hospitals are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of Plaintiff's Fourth Amended Complaint.

7.      Paragraph 7 of Plaintiff's Fourth Amended Complaint states legal conclusions which require neither an admission nor a denial by the Hospitals.  To the extent paragraph 7 requires an answer, the Hospitals deny the allegations set forth in paragraph 7 of Plaintiff's Fourth Amended Complaint.

8.      Paragraph 8 of Plaintiff's Fourth Amended Complaint states legal conclusions which require neither an admission nor a denial by the Hospitals.  To the extent that paragraph 8

requires an answer; the Hospitals deny the allegations set forth in paragraph 8 of Plaintiff's Fourth Amended Complaint.

9.     The Hospitals admit that ESS is in the business of contracting with hospitals to provide billing and staffing services. The Hospitals are without knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 9 of Plaintiff's fourth Amended Complaint.

10.     The Hospitals are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of Plaintiff's Fourth Amended Complaint.

11.     Washington County admits that on June 1, 2012, it entered into an Emergency Department Coverage and Hospitalist Services Agreement (the "June 1 Agreement") with the plaintiff. Washington County denies plaintiff's attempt to characterize the June 1 Agreement, it refers to the June 1 Agreement in its entirety for its content, meaning and effect and denies all allegations inconsistent with or contrary to the express written provisions of the June 1 Agreement and it denies the remaining allegations contained in paragraph 11 of the Fourth Amended Complaint.

12.     Washington County denies the allegations contained in paragraph 12 of plaintiff's Fourth Amended Complaint.

13.     Washington County denies the allegations contained in paragraph 13 of plaintiff's Fourth Amended Complaint.

14.     Washington County denies the allegations contained in paragraph 14 of plaintiff's Fourth Amended Complaint.

15.     Washington County denies the allegations contained in paragraph 15 of plaintiff's Fourth Amended Complaint.

16.     Washington County denies the allegations contained in paragraph 16 of plaintiff's Fourth Amended Complaint.

17.     Washington County denies the allegations contained in paragraph 17 of plaintiff's Fourth Amended Complaint.

18.     Washington County denies the allegations contained in paragraph 18 of plaintiff's Fourth Amended Complaint.

19.     Washington County denies the allegations contained in paragraph 19 of plaintiff's Fourth Amended Complaint.

20.     Washington County states that paragraph 20 of plaintiff's Fourth Amended Complaint fails to set forth any factual allegations and, therefore, Washington County has nothing to admit or deny.  To the extent paragraph 20 sets forth factual allegations, Washington County denies those allegations.

21.     Yadkin admits that on August 1, 2012 it entered into an Emergency Department Coverage and Hospitalist Services Agreement (the "August 1 Agreement") with the Plaintiff. Yadkin denies plaintiff's attempt to characterize the August 1 Agreement, and it refers to that agreement in its entirety for its content, meaning and effect and it denies all allegations in paragraph 21 of Plaintiff's Third Amended Complaint that are inconsistent with or contrary to the express written provisions of the August 1 Agreement and it denies the remaining allegations in paragraph 21 of plaintiff's Fourth Amended Complaint.

22.     Yadkin denies the allegations contained in paragraph 22 of the Fourth Amended Complaint.

23.     Yadkin denies the allegations contained in paragraph 23 of the Fourth Amended Complaint.

24.     Yadkin denies the allegations contained in paragraph 24 of the Fourth Amended Complaint.

25.     Yadkin denies the allegations contained in paragraph 25 of the Fourth Amended Complaint.

26.     Yadkin denies the allegations contained in paragraph 26 of the Fourth Amended Complaint.

27.     Yadkin denies the allegations contained in paragraph 27 of the Fourth Amended Complaint.

28.     Yadkin denies the allegations contained in paragraph 28 of the Fourth Amended Complaint.

29.     Yadkin denies the allegations contained in paragraph 29 of the Fourth Amended Complaint.

30.     Yadkin states that paragraph 30 of Plaintiff's Fourth Amended Complaint fails to set forth factual allegations and, therefore, Yadkin has nothing to admit or deny.  To the extent that paragraph 30 sets forth factual allegations, Yadkin denies those allegations.

31.     Haskell admits that it entered into an Emergency Department Coverage Services Agreement (the "Haskell Agreement") with the plaintiff.  Haskell denies plaintiff's attempt to characterize the Haskell Agreement and it refers to the Haskell Agreement in its entirety for its content, meaning and effect and it denies all allegations in paragraph 31 that are inconsistent with or contrary to the express written provisions of the Haskell Agreement and it denies the remaining allegations in paragraph 31 of plaintiff's Fourth Amended Complaint.

32. Haskell denies the allegations contained in paragraph 32 of plaintiff's Fourth Amended Complaint.

33. Haskell denies the allegations contained in paragraph 33 of plaintiff's Fourth Amended Complaint.

34. Haskell states that paragraph 34 of plaintiff's Fourth Amended Complaint fails to set forth factual allegations and, therefore, Haskell had nothing to admit or deny. To the extent paragraph 34 sets forth factual allegations, Haskell denies those allegations.

35. The Hospitals have already admitted that each of them entered into a separate agreement with the plaintiff. The hospitals deny plaintiff's attempts to characterize the agreements and it refers to each of the agreements in their entirety for the content, meaning and effect and it denies all allegations in paragraph 35 that are inconsistent with or contrary to the express written provisions of the agreements and they deny the remaining allegations in paragraph 35 of plaintiff's Fourth Amended Complaint.

36. The Hospitals deny plaintiff's attempts to characterize previous statements made by one or more of them and they refer to the statements in their entirety for the content, meaning and effect and they deny any allegations that are inconsistent with or contrary to the Hospitals' express statements. The reaming allegations in paragraph 36 are legal conclusions that require neither an admission nor a denial. The Hospitals deny the remaining allegations in paragraph 36 of the Fourth Amended Petition.

37. The Hospitals admit that they are LLCs and that HMC/CAH is the member of the LLCs . The remaining allegations in paragraph 37 of plaintiff's Fourth Amended Petition states legal conclusions that require neither an admission nor a denial. The Hospitals deny the remaining allegations in paragraph 37 of plaintiff's Fourth Amended Complaint.

38.     The Hospitals deny plaintiff's attempts to characterize previous statements made by one or more of them and they refer to the statements in their entirety for the content, meaning and effect and they deny any allegations that are inconsistent with or contrary to the Hospital's express statements. The remaining allegations in paragraph 38 are legal conclusions that require neither an admission nor a denial. The Hospitals deny the remaining allegations in paragraph 38 of plaintiff's Fourth Amended Complaint.

39.     The Hospitals deny Plaintiff's attempts to characterize previous statements made by one or more of them and they refer to the statements in their entirety for the content, meaning and effect and they deny any allegations that are inconsistent with or contrary to the Hospitals' express statements. The Hospitals are aware that HMC/CAH provided some information to ESS regarding the Hospitals, but they deny that it provided any statistics related to the Compensation Variables upon which ESS supposedly relied in negotiating the contracts. Washington and Yadkin admit that it discussed with HMC/CAH problems it was having with Plaintiff, including Plaintiff's inability to provide adequate or appropriate services to the respective Hospital. Haskell is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 and therefore denies same. The Hospitals deny each and every allegation not specifically admitted in paragraph 39.

40.     The Hospitals deny plaintiff's attempts to characterize previous statements made by one or more of them and they refer to the statements in their entirety for the content, meaning and effect and they deny any allegations that are inconsistent with or contrary to the Hospital's express statements. The remaining allegations in paragraph 40 are legal conclusions that require neither an admission nor a denial. The Hospitals deny the remaining allegations in paragraph 40

of plaintiff's Fourth Amended Complaint. To the extent that the allegations are not legal conclusions, the Hospitals deny the same.

41. The Hospitals deny the allegations contained in paragraph 41 of Plaintiff's Fourth Amended Complaint.

42. The Hospitals state that paragraph 42 of Plaintiff's Fourth Amended Complaint does not assert a factual allegation and therefore neither an admission or denial is required of the Hospitals. To the extent that paragraph 42 contains factual allegations, the Hospitals deny those allegations.

43. The Hospitals hereby incorporate paragraphs 1 through 42 of their Answers to Plaintiff's Fourth Amended Complaint as if fully set forth herein.

44. The Hospitals admit that each of them entered into an agreement with the Plaintiff. The Hospitals deny Plaintiff's attempt to characterize the agreements and they refer to the agreements in their entirety for their content, meaning and effect, and the Hospitals deny all allegations inconsistent with or contrary to the express written provisions of each of the agreements and they further deny the remaining allegations contained in paragraph 44 of the Fourth Amended Complaint.

45. The Hospitals deny the allegations contained in paragraph 45.

46. Washington and Yadkin deny the allegations contained in paragraph 46.

47. The Hospitals deny the allegations contained in paragraph 47.

48. The Hospitals hereby incorporate paragraph 1 through 47 of its Answers to Plaintiff's Fourth Amended Complaint as if fully set forth herein.

49. Washington County denies that Fred Soule made fraudulent representations to ESS. The Hospitals deny the remaining allegations contained in paragraph 49.

50.     Yadkin denies that Harley Smith made fraudulent representations to ESS. The Hospitals deny the remaining allegations contained in paragraph 50.

51.     Washington County and Yadkin deny the allegations contained in paragraph 51.

52.     Washington County and Yadkin deny the allegations contained in paragraph 52.

53.     Washington County and Yadkin deny the allegations contained in paragraph 53.

54.     Washington County and Yadkin deny the allegations contained in paragraph 54.

55.     The Hospitals hereby incorporate paragraph 1 through 54 of its Answers to Plaintiff's Fourth Amended Complaint as if fully set forth herein.

56.     Paragraph 56 of Plaintiff's Fourth Amended Complaint states legal conclusions which require neither an admission or denial by the Hospitals. To the extent that paragraph 56 requires an answer, the Hospitals deny the allegations set forth in paragraph 56.

57.     The Hospitals hereby incorporate paragraph 1 through 56 of its Answers to Plaintiff's Fourth Amended Complaint as if fully set forth herein.

58.     The Hospitals admit that they each entered into an agreement with the Plaintiff. The Hospitals deny Plaintiff's attempt to characterize each of the agreements, they refer to each of the agreements in their entirety for the content, meaning in effect of those agreements, and they deny all allegations inconsistent with or contrary to the express written provisions of each of the agreements and the Hospitals deny the remaining allegations contained in paragraph 58 of the Fourth Amended Complaint.

59.     The Hospitals state that paragraph 59 is a legal conclusion which requires neither an admission nor a denial by the Hospitals.

60.     The Hospitals deny plaintiff's attempts to characterize previous statements made by one or more of them and they refer to the statements in their entirety for the content, meaning

and effect and they deny any allegations that are inconsistent with or contrary to the Hospital's express statements. The remaining allegations in paragraph 60 are legal conclusions that require neither an admission nor a denial. The Hospitals deny the remaining allegations in paragraph 60 of plaintiff's Fourth Amended Complaint. The Hospitals deny the remaining allegations contained in paragraph 60 of Plaintiff's Fourth Amended Complaint.

61. The Hospitals deny plaintiff's attempts to characterize previous statements made by one or more of them and they refer to the statements in their entirety for the content, meaning and effect and they deny any allegations that are inconsistent with or contrary to the Hospital's express statements. The remaining allegations in paragraph 61 are legal conclusions that require neither an admission nor a denial. The Hospitals deny the remaining allegations in paragraph 61 of plaintiff's Fourth Amended Complaint. The Hospitals deny the remaining allegations contained in paragraph 61 of Plaintiff's Fourth Amended Complaint.

62. The Hospitals are without knowledge or information sufficient to form a belief as to the truth as to whether ESS maintained direct contact with HMC/CAH throughout the performance of the contract. The Hospitals do admit that they had ongoing contact with HMC/CAH. The Hospitals deny the remaining allegations contained in paragraph 62.

63. The Hospitals deny plaintiff's attempts to characterize previous statements made by one or more of them and they refer to the statements in their entirety for the content, meaning and effect and they deny any allegations that are inconsistent with or contrary to the Hospital's express statements. The remaining allegations in paragraph 63 are legal conclusions that require neither an admission nor a denial. The Hospitals deny the remaining allegations in paragraph 63 of plaintiff's Fourth Amended Complaint.

64.     The Hospitals state that paragraph 64 states a legal conclusion which requires neither an admission nor a denial by the Hospitals.

65.     The Hospitals state that paragraph 65 states a legal conclusion which requires neither an admission nor a denial by the Hospitals.

66.     The Hospitals deny the allegations contained in paragraph 66 of Plaintiff's Fourth Amended Complaint.

WHEREFORE, the Hospitals pray that this Court enter its order dismissing the Fourth Amended Complaint, that the relief sought herein is denied, and that Plaintiff take nothing from the Hospitals, that judgment be entered in favor of the Hospitals, and that the Court grant the Hospitals their costs and expenses and other relief that this Court deems just and proper.

67.     The Hospitals deny all allegations not specifically admitted herein.

68.     Plaintiff's claims are barred because they fail to state a claim upon which relief may be granted.

69.     Plaintiff's claims should be denied in whole and part because of accord and satisfaction.

70.     Plaintiff's claims are barred in whole and part on the basis of a doctrine of estoppel, laches, waiver, consent, gratification and unclean hands.

71.     Plaintiff's claims should be denied in whole because it was the first to breach the agreements and therefore cannot seek relief under the agreement.

72.     Plaintiff's claims are barred in whole or in part because of the basis of intervening or supervening cause or event.

73.     Plaintiff's claims are barred in whole or in part on the basis of claimant's own conduct or by the conduct of its agents, representatives, and consultants.

74. Plaintiff's claims, with regard to attorney's fees, are barred because the award of attorney's fees are not permissible under the laws of North Carolina or Oklahoma.

75. Plaintiff's claims are barred in whole or in part on the basis that Plaintiff has cancelled the contract.

76. Plaintiff's claims are barred in whole or in part because of detrimental reliance.

77. Plaintiff's claims are barred in whole or in part because of substitution, revocation, or termination.

78. Plaintiff's claims are barred in whole or in part on the basis of modification.

### CAH ACQUISITION COMPANY #10, LLC, CAH ACQUISITION COMPANY #1, LLC, and CAH ACQUISITION COMPANY #16, LLC COUNTERCLAIMS

Defendants and Counterclaim Plaintiffs, CAH Acquisition Company #1, LLC, CAH Acquisition Company #10, LLC, and CAH Acquisition Company #16, LLC (collectively the "Hospitals"), for their counterclaims against Plaintiff and Counterclaim Defendant, Emergency Staffing Solutions, Inc. ("ESS"), state as follows:

### PARTIES

1. Counterclaimant-Plaintiff CAH Acquisition Company #1, LLC ("Washington County") is a Delaware limited liability company with its principal office at 1100 Main Street, Suite 2350, Kansas City, Missouri 64105. Its sole member is Washington Country's Agency/CAH Consolidated, Inc. ("Agency/CAH").

2. Counterclaimant-Plaintiff CAH Acquisition Company #10, LLC ("Yadkin") is a Delaware limited liability company with its principal office at 1100 Main Street, Suite 2350, Kansas City, Missouri 64105. The sole member of Yadkin is HMC/CAH.

3.      Counterclaim-Plaintiff CAH Acquisition Company #16, LLC ("Haskell") is a Delaware limited liability company with its principal office at 1100 Main Street, Suite 2350, Kansas City, Missouri 64105.  The sole member of Haskell is HMC/CAH.

4.      Counterclaim-Defendant Emergency Staffing Solutions, Inc. ("ESS") is a Texas corporation with its principal office at 17304 Preston Road, No. 1400, Dallas, Texas 75252.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) as the parties are of diverse citizenship and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

6.      The Court has personal jurisdiction over ESS as it is a Texas corporation, which regularly conducts business within the State of Texas, including within this district.

7.      Venue is proper in this district, pursuant to 28 U.S.C. § 1391(a).

## FACTS, TO ALL COUNTS

8.      Washington County, Yadkin and Haskell (the "Hospitals") are part of a network of Critical Access Hospitals that are wholly-owned and operated by HMC/CAH.  The Hospitals are acute care hospitals located in rural North Carolina, Oklahoma, (Washington County and Yadkin), Oklahoma (Haskell).  They are certified by the Center for Medicare and Medicaid Services ("CMS") as Critical Access Hospitals.  Among the services that the Hospitals provide are emergency, acute care, swing bed, surgery and rehabilitation.

9.      In order to provide all of its services to the community, the Hospitals have, from time to time, used third party services to provide staffing for its emergency department and hospitalist management services.

10.     ESS provides custom-tailored management and staffing for emergency departments and hospitalist programs for suburban and rural facilities. ESS claims to be a leader in emergency and hospitalist management and staffing. ESS' services include providing doctors to staff a hospital's emergency department and hospitals.

11.     In 2012, the Hospitals and Defendant entered into negotiations by which ESS would provide doctors to the Hospitals for coverage of their emergency department and for their hospitalist services.

12.     On June 1, 2012, Washington County and Defendant entered into an Emergency Department Coverage and Hospitalist Services Agreement (the "June 1 Agreement").

13.     On August 1, 2012, Yadkin and Defendant entered into an Emergency Department Coverage and Hospitalist Services Agreement (the "August 1 Agreement").

14.     On September 1, 2012, CAH #16 and Defendant entered into an Emergency Department Coverage Services Agreement (the "September 1 Agreement") (collectively the "Coverage Agreements").

15.     Under the terms of the Coverage Agreements, the Defendant agreed, among other things, to perform the following functions and duties for each of the Hospitals, (a) staff the emergency department with the qualified physicians; (b) assure that the physicians perform their respective emergency department and hospitalist management services; (c) provide coverage of the emergency department; (d) provide the Medical Director of the emergency department who was to manage the department on a day-to-day basis; (e) schedule the physician's hours of service; (f) provide coverage to hospitalist service program; (g) perform all the other administrative obligations required by the September 1 Agreement; (h) assure that the physicians are providing medically necessary services to all patients, including indigents and otherwise

comply with the Emergency medical Treatment and Labor Act ("EMTALA") as well as other applicable rules, laws and regulations; (i) assure that the physicians providing services comply with the Hospitals' corporate compliance program; and (j) provide a medical director for the Hospitalist Services program.

16. Under the terms of the Coverage Agreements, each Hospital had the right to (a) approve before assignment to the hospital, each physician the defendant designated to provide services to the emergency department or for hospitalist services; (b) insist on the immediate removal and replacement of any physician or refuse permission to any physician to utilize the hospital if, in the hospital's reasonable determination, the physician has or continued to engage in conduct that constitutes a threat to the health, safety or welfare of any hospital patient, employee or visitor; (c) approve, before assignment, the Defendant's selection of the physician to serve as the Medical Director of the Emergency Department; and (d) approve, before assignment, the Defendant's selection of the physician to serve as the Medical Director of the Hospitalist Services Program.

17. On October 20, 2012, Washington County and Defendant entered into a First Amendment of the June 1 Agreement (the "Washington County First Amendment"). Under the terms of the Washington County First Amendment, the Parties amended the compensation for Emergency Department Services and removed the provision pertaining to Hospitalist Services after November 1, 2012. The Parties also added a provision regarding restrictive covenants. Otherwise, the terms of the June 1 Agreement continued to be in full force and effect.

18. From the time the parties entered into the Agreements through May 14, 2013, the parties' conduct and practice was that no monies were due from the Hospitals to Defendant

under the various Agreements until the passage of 45 days after the Hospital received Defendant's invoice.

19.     For example, on May 14, 2013, ESS informed each Hospital that it (ESS) needed to be paid on the invoices that were 45 days after receipt but did not request any payment for invoices that had been outstanding for less than 45 days.  In fact, in the May 14 e-mail, Defendant highlighted the only payments that were due and owing.  The highlighted amounts were all 45 days or more since the individual Hospital had received the invoice.  See May 14 e-mail from Cari O'Brien to Theresa Flores attached hereto and made a part hereof as Exhibit 1.

20.     Additionally, ESS did not charge interest on any amounts owed by each Hospital until the amount was more than 45 days old.

21.     The parties' performance and conduct during the course of the agreement with regard to payment for services rendered constituted an affirmation that each Hospital did not have any obligation to pay the defendant's invoice until after forty-five (45) days from the receipt of the invoice.

22.     Because of the parties' mutual course of conduct the parties amended the Coverage Agreements and the Washington County First Amendment so that none of the Hospitals made its payments and accepted them after the passage of 45 days.  (the "Hospital-Wide Amendment").

23.     Shortly after the parties entered into the Agreements and throughout the parties' relationship, Defendant failed to honor its obligations under the Coverage Agreements or the Washington County First Amendment or the Hospital-Wide Amendment.

24.     Among other things, Defendant and the doctors it hired to provide services at the Hospitals did not comply with the terms of the Coverage Agreements or the Washington County First Amendment or the Hospital-Wide Amendment in that it:

(a)     failed to provide a Medical Director for the hospital pursuant to the terms of each Agreement;

(b)     failed to assure department coverage in accordance with the terms of the Agreement including, using residents in the emergency room with little or no experience and failing to review the doctors assigned to the emergency room;

(c)     failed to provide Haskell with the credentials of the new doctors that were assigned to the hospital and/or failed to inform Haskell of new doctors working at the hospital;

(d)     when Haskell was having problems or issues with the doctors that defendant provided to the hospital, defendant failed to address the problems at all or failed to address them in a timely manner and/or Defendant failed to provide feedback on the issues;

(e)     provided doctors that were not listed in the network;

(f)     sued for payment of all Hospitals on billed amounts that were less forty-five (45) days old.

(g)     failed to provide after-hour coverage to the Surgical Units at Washington County;

(h)     failed to participate in the facility performance improvements;

(i)     when Washington County was having problems or issues with the doctors that Defendant provided to the Hospital, Defendant failed to address the problems in a timely manner and/or Defendant failed to provide feedback on issues;

(j)     failed to provide Washington County with the credentials of the new doctors it was signing to the Hospital and/or failed to permit Washington County any time to review the credentials of a new doctor before the doctor was assigned to the Hospital;

(k)     unilaterally altered the terms of the June 1 Agreement so that Defendant provided only one set of doctors to cover both the Emergency Room and the Hospital In-Patients, rather than providing doctors for the Emergency Department and a second set of doctors for the Hospital Services, as required under the June 1 Agreement;

(l)     failed to participate in peer review process;

(m)     engaged in several potential EMTALA violations at Washington County and Yadkin;

(n)     failed to assure department coverage in accordance with the terms of the agreement with Haskell, including repeated instances where doctors had to work 36-48 hour shifts and ESS failed to otherwise properly schedule the physicians' hours of services;

(o)     failed to provide quality physicians to work in the Emergency Room at Yadkin;

(p)     failed to provide Yadkin necessary information about the doctors who would be providing services at the Hospital. The end result was the Hospital could not make an informed reasonable decision as to whether it should approve the physician to

work in its Emergency Room, including ESS's failure to inform Haskell regarding new physicians being terminated because of possession of hand guns or drinking on the job and threatening emails;

(q) assigning a doctor at Haskell, even though the Hospital requested that particular doctor not receive Hospital privileges; and

(r) a failure to address the problems that Haskell was having with doctors in a timely manner and/or Defendant's failure to provide feedback on the issues.

25. In March and April of 2013, the Hospitals, through HMC/CAH, entered into negotiations with defendant to resolve the on-going relationship between the Hospitals and the Defendant.

26. Unbeknownst to the Hospitals and while the parties were engaged in their negotiations, ESS had already filed suit against each of them, claiming a breach of the various Agreements.

27. After ESS filed suit against the Hospitals, it informed each of them that if they made the requested payment then ESS would continue to provide its coverage.

28. The Hospitals made the payment as requested but Defendant did not dismiss the lawsuit even though they were current on its payments.

29. Even though the Hospitals were current on what is due and owing to Defendant, Defendant refused and continues to refuse to dismiss its lawsuit against the Hospitals and it continues to claim that it is entitled to lost profits for the life of the contract.

## COUNT I – Declaratory Judgment

30. Plaintiffs incorporate paragraphs 1 through 22 of the Complaint as if fully set forth herein.

31.     Since the onset of each of the Agreements, Defendant has failed to perform the requirements and obligations that it has under the each Agreement and the Washington County Amendment or the Hospital-Wide Amendment.

32.     Defendant's failure to comply with the terms of the Agreements and the Amendments include, but are not limited to, the breaches identified in paragraph 24.

33.     Defendant has failed to comply with the Hospital-Wide Amendment in that Defendant sued for payment on billed amounts that were less than forty-five (45) days old and therefore not due.

34.     Defendant also breached the Parties' mutual agreement to terminate the June 1 Agreement and its Amendments, and the August 1 Agreement and its Amendments by failing to dismiss its lawsuit against Washington County and Yadkin, and continuing to claim loss profits for the life of the Agreement.

35.     Even though Defendant mutually agreed with Washington County and Yadkin to terminate the June 1 Agreement and its Amendments and the August 1 Agreement and its Amendments, Defendant continues to maintain its lawsuit, including its claim for loss profits.

36.     Defendant also breached the parties' agreement by failing to dismiss its lawsuit against the Hospitals even though Defendant made the requested payments and was and is current on its payments to Defendant.

37.     In response to the Hospitals' request that Defendant comply with the terms of the Coverage Agreements or the Hospital-Wide Amendment, Defendant has either acted contrary to the Agreements and the Amendments or it has claimed that it has satisfied the terms of the Agreements and the Amendments or that it understood the terms differently than the Hospitals.

38.     The Hospitals believe that the Agreements and their Amendments are invalid and unenforceable because of the Defendant's material failure to comply with the terms of the Agreements or their Amendments.

39.     The Hospitals are in a position of uncertainty as to the enforceability of the Agreements and their Amendments including whether it still has any duties or responsibilities under the Agreements.

40.     There exists between the parties an actual and present controversy regarding the enforceability of the Agreements and their Amendments and the agreement to release Defendant from the agreements.

41.     This controversy is ripe for judicial resolution by this Court.

WHEREFORE, the Hospitals pray the Court for relief as follows:

For declaration that the September 1 Agreement and its Amendment are no longer valid and they are unenforceable;

The Hospitals are no longer bound and have not been bound since at least January of 2013 to comply with the terms or conditions of the Agreements or their Amendments;

For an award of the Hospitals' costs and attorney's fees herein as permitted by law; and

For such other relief as the Court deems just and proper.

## COUNT II – Equitable Estoppel

42.     Plaintiffs incorporate paragraphs 1 through 34 of the Petition as if fully set forth herein.

43.     Throughout the pertinent time period, the Defendant, as described above, either acted, represented or was silent so as to lead the Plaintiffs into believing that the (Plaintiffs') payments were timely.

44. Throughout the pertinent time period the Defendant, as described above either acted, represented or was silent so as to lead the Plaintiffs into believing that the Defendant would dismiss its lawsuit against the Hospitals.

45. The Hospitals reasonably relied and acted upon the Defendant's actions, representations or silence when it made its payments or took certain actions or failed to take certain actions.

46. The Hospitals' reasonable reliance on Defendant's actions, representations or silence was to the Hospitals' detriment.

47. The Hospitals are prejudiced if the Defendant is allowed to deny the existence of its (Defendant's) actions, representations, silence or other admissions.

WHEREFORE, Plaintiffs pray that the Defendant is estopped from claiming any right to monies after May 15, 2013 or from attempting to enforce the Agreements or any of its Amendments.

Respectfully submitted,

HUSCH BLACKWELL LLP


By: /s/ Buffey E. Klein_____
Buffey E. Klein (Texas Bar No. 24032515)
John K. Power
2001 Ross Ave., Suite 2001
Dallas, Texas 75201
buffey.klein@huschblackwell.com
john.power@huschblackwell.com

ATTORNEYS FOR DEFENDANT
CAH ACQUISITION COMPANY #10

## <u>CERTIFICATE OF SERVICE</u>

       I, the undersigned, hereby certify that on November 11, 2014, a true and correct copy of the above document was sent via e-service and U.S. Mail, postage prepaid, to the below persons/entities:

       Hastings L. Hanshaw
       John M. Hafen
       Hanshaw Kennedy Marquis, PLLC
       1415 Legacy Dr., Suite 350
       Frisco, TX 75034



/s/ Buffey E. Klein