IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| EMERGENCY STAFFING SOLUTIONS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:13cv309 (Judge Mazzant) |
| CAH ACQUISITION COMPANY #10, LLC, ET AL, | § § § | |
| Defendant. | § § | |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND BRIEF IN SUPPORT THEREOF**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Plaintiff Emergency Staffing Solutions, Inc. ("Plaintiff" or "ESS") files this Motion for Partial Summary Judgment. In support of this motion, ESS respectfully shows the Court as follows:

**I.
INTRODUCTION**

ESS filed this action for breach of contract and/or fraudulent inducement against Defendant CAH Acquisition Company #1, LLC d/b/a Washington County Hospital ("CAH-Washington"); Defendant CAH Acquisition Company #10, LLC d/b/a Yadkin Valley Community Hospital ("CAH-Yadkin"); Defendant CAH Acquisition Company #16, LLC d/b/a Haskell County Community Hospital ("CAH-Haskell"), and Defendant HMC/CAH, Inc. ("HMC/CAH") (collectively, "Defendants"). ESS seeks monetary damages and the recovery of its attorney fees.

ESS respectfully requests that the Court find that: (1) Defendant CAH-Washington, Defendant CAH-Yadkin, and Defendant CAH-Haskell each breached its contract with ESS by

failing to pay ESS for services provided under contract; and (2) ESS is entitled to recover attorneys' fees incurred in pursuing its claims for breach of contract.

## II.
## STATEMENT OF ISSUES

1. Does ESS prove that there is no genuine issue of material fact as to its breach of contract claims against CAH-Washington, CAH-Yadkin, and CAH-Haskell?

2. Is ESS entitled to summary judgment as to each Defendant's liability to pay for ESS's attorney fees?

3. Are Defendants' declaratory judgment and equitable estoppel claims improper counterclaims?

4. Should prejudgment and postjudgment interest be set at the contractually agreed 18%?

## III.
## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. ESS specializes in the business of contracting with hospitals to provide, among other things, emergency department billing and physician staffing services.[1]

2. On or about June 1, 2012, ESS and CAH-Washington entered into a contract whereby ESS agreed to provide emergency department billing and physician staffing services to CAH-Washington in exchange for CAH-Washington's agreement to compensate ESS for those services (the "CAH-Washington Agreement").[2]

3. On or about October 20, 2012, ESS and CAH-Washington executed an amendment to the CAH-Washington Agreement (the "2012 Amendment").[3] This 2012 Amendment increased the monthly subsidy to account for the lower than expected collections at CAH-Washington's hospital.[4]

---

[1] Affidavit of Shonda Rupe ("Rupe Affidavit") at ¶ 4, attached hereto as Exhibit A.
[2] Rupe Affidavit at ¶ 5; Exhibit A-1
[3] Rupe Affidavit at ¶ 7; Exhibit A-2
[4] *Id.*

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 2**

4. ESS provided services to CAH-Washington in compliance with the terms of the CAH-Washington Agreement and 2012 Amendment until May 16, 2013, when CAH-Washington unilaterally terminated the CAH-Washington Agreement.[5] CAH-Washington unilaterally terminated by instructing ESS's physicians that had reported for work to go home and instructing ESS that they would no longer be using its services.[6]

5. After all payments and offsets, $122,881.79 remains due and owing by CAH-Washington under the CAH-Washington Agreement as reflected in CAH-Washington's account statement.[7] Pursuant to the terms of the contract, CAH-Washington also owes $40,674.01 in finance charges that have accrued at an annual rate of 18% from the date the invoice was due.[8]

6. On or about August 1, 2012, ESS and CAH-Yadkin entered into a contract whereby ESS agreed to provide emergency department billing and physician staffing services to CAH-Yadkin in exchange for CAH-Yadkin's agreement to compensate ESS for those services (the "CAH-Yadkin Agreement").[9]

7. ESS provided services to CAH-Yadkin in compliance with the terms of the CAH-Yadkin Agreement until May 16, 2013, when CAH-Yadkin unilaterally terminated the CAH-Yadkin Agreement.[10] CAH-Yadkin unilaterally terminated by instructing ESS's physicians that had reported for work to go home and instructing ESS that they would no longer be using its services.[11]

8. After all payments and offsets, $107,917.57 remains due and owing by CAH-

---

[5] Rupe Affidavit at ¶ 9
[6] *Id.*
[7] Exhibit A-3
[8] Exhibit A-4
[9] Rupe Affidavit at ¶ 11; Exhibit A-5
[10] Rupe Affidavit at ¶ 13
[11] *Id.*

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 3**

Yadkin under the CAH-Yadkin Agreement as reflected in CAH-Yadkin's account statement.[12] Pursuant to the terms of the contract, CAH-Yadkin also owes $35,843.11 in finance charges that have accrued at an annual rate of 18% from the date the invoice was due.[13]

9. On or about June 1, 2012, ESS and CAH-Haskell entered into a contract whereby ESS agreed to provide emergency department billing and physician staffing services to CAH-Haskell in exchange for CAH-Haskell's agreement to compensate ESS for those services (the "CAH-Haskell Agreement").[14]

10. ESS provided services to CAH-Haskell in compliance with the terms of the CAH-Haskell Agreement.[15]

11. After all payments and offsets, $86,467.16 remains due and owing by CAH-Haskell under the CAH-Haskell Agreement as reflected in CAH-Haskell's account statement.[16] Pursuant to the terms of the contract, CAH-Haskell also owes $12,384.50 in finance charges that have accrued at an annual rate of 18% from the date the invoice was due.[17]

12. ESS contacted CAH-Washington, CAH-Yadkin, and CAH-Haskell, respectively, and notified each of its breach of their respective agreement and demanded that they pay ESS all amounts due and owing for services provided.[18]

13. To date, Defendants refuse to comply with their financial obligations under the agreements.

14. ESS now files this Motion to establish CAH-Washington's, CAH-Yadkin's, and CAH-Haskell's breach of contract. ESS also seeks to establish Defendants' liability for ESS's

---

[12] Exhibit A-6
[13] Exhibit A-7
[14] Rupe Affidavit at ¶ 15; Exhibit A-8
[15] Rupe Affidavit at ¶ 17
[16] Exhibit A-9
[17] Exhibit A-10
[18] Rupe Affidavit at ¶ 19

attorney fees.

## IV.
## SUMMARY JUDGMENT EVIDENCE

In accordance with Rule 56(c), ESS relies upon the following summary judgment evidence in support of this Motion:

Exhibit 1 – Affidavit of Shonda Rupe and attachments thereto

ESS also requests that the Court take judicial notice of the pleadings on file with the Court for the limited purposes set forth in this Motion.

## V.
## SUMMARY JUDGMENT STANDARD

To succeed on its traditional motion for summary judgment under Rule 56, ESS must establish that there is no genuine issue of material fact so that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Baton Rouge Oil & Chem. Workers Un. v. ExxonMobil Corp.*, 289 F.3d. 373, 375 (5th Cir. 2002). The substantive law governing the suit identifies essential elements of the claims at issue and thus indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## VI.
## ARGUMENTS AND AUTHORITIES

**A.  ESS is entitled to summary judgment as to Defendant CAH-Washington's, Defendant CAH-Yadkin's, and Defendant CAH-Haskell's liability for breach of contract for failure to pay amounts owed for services provided under the Agreements**

To establish its claim for breach of contract, ESS must show that: (1) there is a valid and enforceable contract between ESS and Defendant; (2) ESS performed its obligations under the contract; (3) Defendant breached the contract; and (4) ESS suffered injury as a result of

Defendant's breach. *Bayway Serv., Inc. v. Ameri-Build Constr., L.C.*, 106 S.W.3d 156, 160 (Tex. App.—Houston [1st Dist.] 2003, not pet.).

1.  **Defendant CAH-Washington Failed to Perform its Contractual Obligations by Failing to Pay Amounts Owed for Services Rendered and Unilaterally Terminating the Agreement**

As demonstrated by the evidence below, there is no genuine issue of material fact as to CAH-Washington's breach of its obligation to pay for services provided by ESS under the CAH-Washington Agreement and its unilateral termination of the CAH-Washington Agreement.

On or about June 1, 2012, ESS and CAH-Washington entered into the CAH-Washington Agreement in which ESS agreed to provide emergency department billing and physician staffing services to CAH-Washington in exchange for CAH-Washington's agreement to compensate ESS for those services.[19]

On or about October 20, 2012, ESS and CAH-Washington executed the 2012 Amendment.[20] The 2012 Amendment increased the monthly subsidy to account for the lower than expected collections at CAH-Washington's hospital.[21]

ESS provided services to CAH-Washington in compliance with the terms of the CAH-Washington Agreement and 2012 Amendment and billed CAH-Washington for those services.[22] The compensation provision found in Exhibit C & D of the CAH-Washington Agreement states that CAH-Washington must pay each invoice in full within 10 days of receipt, and that any invoice not paid within 15 days of receipt shall accrue interest at an annual rate of 18%.[23]

---

[19] Rupe Affidavit at ¶ 5; Exhibit A-1
[20] Rupe Affidavit at ¶ 7; Exhibit A-2
[21] *Id.*
[22] Rupe Affidavit at ¶ 9
[23] Exhibit A-1 at exhibit c & d thereof

ESS has informed CAH-Washington of its breach and demanded that the invoices be paid in full.[24] Despite these efforts, CAH-Washington refuses to comply with its obligations under the CAH-Washington Agreement.[25] This breach has caused undue harm to ESS because it has performed a worthwhile service to CAH-Washington without receiving just compensation in return. As of March 16, 2015, $163,555.80 remains due and outstanding by CAH-Washington for services provided and finance charges.[26]

CAH-Washington unilaterally terminated prior to the expiration of the term of the CAH-Washington Agreement by instructing ESS' physicians to go home and telling ESS that they would no longer be using its services.[27]

ESS respectfully requests that the Court find that, as a matter of law, ESS is entitled to summary judgment on its claim that CAH-Washington is liable to ESS for breach of its payment obligations for services provided under the CAH-Washington Agreement.

ESS further requests that the Court find that ESS is entitled to damages in an amount no less than $163,555.80.

ESS further requests that the Court find that CAH-Washington unilaterally terminated the CAH-Washington Agreement and reserve for trial a finding of damages arising out of the unilateral breach.

2. <u>Defendant CAH-Yadkin Failed to Perform its Contractual Obligations by Failing to Pay Amounts Owed for Services Rendered and Unilaterally Terminating the Agreement</u>

As demonstrated by the evidence below, there is no genuine issue of material fact as to CAH-Yadkin's breach of its obligation to pay for services provided by ESS under the CAH-Yadkin Agreement and its unilateral termination of the CAH-Yadkin Agreement.

---

[24] Rupe Affidavit at ¶ 19
[25] *Id.*
[26] *Id.* at ¶ 10; Exhibit A-3; Exhibit A-4
[27] Rupe Affidavit at ¶ 9

**<u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u> – Page 7**

On or about August 1, 2012, ESS and CAH-Yadkin entered into the CAH-Yadkin Agreement in which ESS agreed to provide emergency department billing and physician staffing services to CAH-Yadkin in exchange for CAH-Yadkin's agreement to compensate ESS for those services.[28]

ESS provided services to CAH-Yadkin in compliance with the terms of the CAH-Yadkin Agreement and billed CAH-Yadkin for those services.[29] The compensation provision found in Exhibit C & D of the CAH-Yadkin Agreement states that CAH-Yadkin must pay each invoice in full within 10 days of receipt, and that any invoice not paid within 15 days of receipt shall accrue interest at an annual rate of 18%.[30]

ESS has informed CAH-Yadkin of its breach and demanded that the invoices be paid in full.[31] Despite these efforts, CAH-Yadkin refuses to comply with its obligations under the CAH-Yadkin Agreement.[32] This breach has caused undue harm to ESS because it has performed a worthwhile service to CAH-Yadkin without receiving just compensation in return. As of March 16, 2015, $143,760.68 remains due and outstanding by CAH-Yadkin for services provided and finance charges.[33]

CAH-Yadkin unilaterally terminated prior to the expiration of the term of the CAH-Yadkin Agreement by instructing ESS' physicians to go home and telling ESS that they would no longer be using its services.[34]

---

[28] *Id.* at ¶ 11; Exhibit A-5
[29] Rupe Affidavit at ¶ 13
[30] Exhibit A-5
[31] Rupe Affidavit at ¶ 19
[32] *Id.*
[33] *Id.* at ¶ 14; Exhibit A-6; Exhibit A-7
[34] Rupe Affidavit at ¶ 13

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 8**

ESS respectfully requests that the Court find that, as a matter of law, ESS is entitled to summary judgment on its claim that CAH-Yadkin is liable to ESS for breach of its payment obligations for services provided under the CAH-Yadkin Agreement.

ESS further requests that the Court find that ESS is entitled to damages in an amount no less than $143,760.68.

ESS further requests that the Court find that CAH-Yadkin unilaterally terminated the CAH-Yadkin Agreement and reserve for trial a finding of damages arising out of the unilateral breach.

3. <u>Defendant CAH-Haskell Failed to Perform its Contractual Obligations by Failing to Pay Amounts Owed for Services Rendered</u>

As demonstrated by the evidence below, there is no genuine issue of material fact as to CAH-Haskell's breach of its obligation to pay for services provided by ESS under the Agreement.

On or about August 1, 2012, ESS and CAH-Haskell entered into the CAH-Haskell Agreement in which ESS agreed to provide emergency department billing and physician staffing services to CAH-Haskell in exchange for CAH-Haskell's agreement to compensate ESS for those services.[35]

ESS provided services to CAH-Haskell in compliance with the terms of the CAH-Haskell Agreement and billed CAH-Haskell for those services.[36] The compensation provision found in Exhibit B of the CAH-Haskell Agreement states that CAH-Haskell must pay each invoice in full within 10 days of receipt, and that any invoice not paid within 15 days of receipt shall accrue interest at an annual rate of 18%.[37]

---

[35] *Id.* at ¶ 15; Exhibit A-8
[36] Rupe Affidavit at ¶ 17
[37] Exhibit A-8

**<u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 9</u>**

ESS has informed CAH-Haskell of its breach and demanded that the invoices be paid in full.[38] Despite these efforts, CAH-Haskell refuses to comply with its obligations under the CAH-Haskell Agreement.[39] This breach has caused undue harm to ESS because it has performed a worthwhile service to CAH-Haskell without receiving just compensation in return. As of March 16, 2015, $98,851.66 remains due and outstanding by CAH-Haskell for services provided and finance charges.[40]

ESS respectfully requests that the Court find that, as a matter of law, ESS is entitled to summary judgment on its claim that CAH-Haskell is liable to ESS for breach of its payment obligations for services provided under the CAH-Haskell Agreement.

ESS further requests that the Court find that ESS is entitled to damages in an amount no less than $98,851.66.

**B.     ESS is entitled to summary judgment as to each Defendant's liability to pay for ESS's attorney fees**

A plaintiff is entitled to recover attorney fees incurred in the pursuit of a valid breach of contract claim. *See* Tex. Civ. Prac. & Rem. Code § 38.001; Okla. Stat. Tit. 12 § 936; N.C.G.S. §6-21.5.

ESS is represented by an attorney in this lawsuit and has incurred attorneys' fees in prosecuting its claims against Defendants CAH-Washington, CAH-Yadkin, and CAH-Haskell.[41]

ESS has incurred substantial attorney fees and will continue to incur attorney fees through the trial of this matter.[42]

---

[38] Rupe Affidavit at ¶ 19
[39] *Id.*
[40] *Id.* at ¶ 18; Exhibit A-9; Exhibit A-10
[41] Rupe Affidavit at ¶ 20
[42] *Id.*

ESS respectfully requests that the Court find that, as a matter of law, ESS is entitled to recover attorney fees incurred in pursuing its claims for breach of contract against each Defendant. ESS further requests that the Court reserve the determination of the amount of attorney fees to which ESS is entitled for a later date.

**C.     ESS is entitled to summary judgment that Defendants' declaratory judgment and equitable estoppel claims are not proper counterclaims as a matter of law**

1.     <u>Defendants' declaratory judgment claims are affirmative defenses</u>

Defendants' seeking of declaratory relief is disallowed in this case because ESS is already seeking "a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy." *Universal Printing Co., Inc. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex.App.—Houston 2001).

Here, Defendants seek a declaration that the "September 1 Agreement and its Amendment are no longer valid and they are unenforceable," and that the "Hospitals are no longer bound and have not been bound since at least January of 2013 to comply with the terms or conditions of the Agreements or their Amendments." Put simply, if this Court were to provide this declaratory relief, it would be an effective final judgment of ESS' breach of contracts claims, which would be improper as a matter of law.

The law is clear that the "Declaratory Judgments Act is not available to settle disputes currently pending before a court." *Staff Industries, Inc. v. Hallmark Contracting, Inc.*, 846 S.W.2d 542, 547 (Tex.App.—Corpus Christi 1993). There can be no question that the contracts upon which declaratory relief is sought by Defendants is already pending before this Court as a result of ESS' breach of contract claims.

ESS respectfully requests that the Court find that Defendants' declaratory judgment action be declared an improper and invalid counterclaim as a matter of law.

2. Defendants' equitable estoppel claim is an affirmative defense

Pursuant to Federal Rule of Civil Procedure 8(c)(2), "[i]f a party mistakenly designates a . . . counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated . . ." The Supreme Court states a way to delineate a counterclaim from a defense: "A defense cannot possibly be adjudicated separately from the plaintiff's claim to which it applies; a counterclaim can be." *Reiter v. Cooper*, 507 U.S. 258, 265 (1993).

Defendants plead equitable estoppel as a counterclaim. In its equitable estoppel cause of action, Defendants ask the Court to estop ESS from "claiming any right to monies after May 15, 2013, or from attempting to enforce the Agreements or any of its Amendments." This equitable estoppel claim clearly could not be adjudicated separately from ESS's breach of contract claims and are plead as a direct defense those same claims.

Further, equitable estoppel is an affirmative defense as a matter of law. Federal Rule of Civil Procedure 8(c)(1) lists a variety of affirmative defenses, including in this list is estoppel.

ESS respectfully requests that the Court find that Defendants' counterclaim for equitable estoppel is misdesignated and is an affirmative defense.

**D. ESS is entitled to summary judgment that the prejudgment and postjudgment interest should be set at the contractually agreed 18%**

Each of the Defendants' contracts with ESS contains a provision that calls for accrual of an annual interest rate of 18% for all invoices that are not paid within 15 days.[43] Texas law provides that if a contract between the parties specifies a rate of 18% or lower, then the rate specified in the contract shall be the postjudgment interest applied. And, Texas common law

---
[43] *See* Exhibits 1, 5, and 8

allows "prejudgment interest to accrue at the same rate as postjudgment interest on damages awarded for breach of contract." *Jones v. R.O. Pomroy Equip. Rental, Inc.*, 438 S.W.3d 125, 132 (Tex.App.—Eastland 2014).

Therefore, ESS respectfully requests that the Court find that prejudgment and postjudgment interest in this case shall be set at the contractually agreed 18%.

## VII.
## REQUEST FOR RELIEF

CONSIDERING THESE PREMISES, Plaintiff Emergency Staffing Solutions, Inc. respectfully requests that this Court enter a summary judgment against Defendants for the following relief:

(A) a finding that Defendant CAH-Washington is liable to ESS for breach of its payment obligations under the CAH-Washington Agreement and 2012 Amendment;

(B) a finding that Defendant CAH-Washington is liable to ESS for no less than $163,555.80 for services provided and finance charges under the CAH-Washington Agreement and 2012 Amendment;

(C) a finding that Defendant CAH-Washington breached by unilaterally terminating the agreement, and preserve from trial a finding of damages arising out of the unilateral breach;

(D) a finding that Defendant CAH-Yadkin is liable to ESS for breach of its payment obligations under the CAH-Yadkin Agreement;

(E) a finding that Defendant CAH-Yadkin is liable to ESS for no less than $143,760.68 for services provided and finance charges under the CAH-Yadkin Agreement;

(F) a finding that Defendant CAH-Yadkin breached by unilaterally terminating the agreement, and reserve for trial a finding of damages arising out of the unilateral breach;

(G) a finding that Defendant CAH-Haskell is liable to ESS for breach of its payment obligations under the CAH-Haskell Agreement;

(H) a finding that Defendant CAH-Haskell is liable to ESS for no less than $98,851.66 for services provided and finance charges under the CAH-Haskell Agreement;

(I) a finding that each of the Defendants are liable to ESS for attorney fees incurred by ESS in prosecuting its claims against the Defendants for breach of their respective Agreements and reserve for trial the determination of the amount of attorney fees;

(J) a finding that Defendants' counterclaim for declaratory judgment is not a proper counterclaim in this case;

(K) a finding that Defendants' counterclaim for equitable estoppel is misdesignated and is an affirmative defense;

(L) a finding that prejudgment and postjudgment interest in this case shall be set at 18%; and

(M) such other and further relief to which this Court deems that ESS is justly entitled.

Respectfully submitted,

/s/ John M. Hafen
John M. Hafen
Texas State Bar No. 24057879
jmh@hanshawkennedy.com
David R. Wortham, Jr.
Texas State Bar No. 24093392
drw@hanshawkennedy.com

**HANSHAW KENNEDY MARQUIS, PLLC**
1415 Legacy Drive, Suite 350
Frisco, Texas 75034
Telephone: (972) 731-6500
Telecopier: (972) 731-6555

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 16, 2015 all counsel of record were served with a copy of the forgoing PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT by the Court's CM/ECF system per Local Rule CV-5(a)(3)

/s/ John M. Hafen