IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| EMERGENCY STAFFING SOLUTIONS, INC., | § | |
|---|---|---|
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:13cv309 |
| | § | (Judge Mazzant) |
| CAH ACQUISITION COMPANY #10, LLC, ET AL, | § | HEARING REQUESTED |
| Defendant. | § | |

## PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff Emergency Staffing Solutions, Inc. ("Plaintiff" or "ESS") files this Motion for Sanctions and respectfully shows the Court as follows:

## I.
## SUMMARY OF RELIEF SOUGHT

ESS seeks sanctions against the Defendants,[1] who have failed to comply with their discovery obligations under requests issued by ESS, the Federal Rules, this Court's August 28, 2013 discovery control order, and the Eastern District of Texas' local rules. ESS previously made two separate demands,[2] both unheeded by the Defendants, for the following discovery due from the Defendants:

1. Initial disclosures and document production (as required by the Court's standing order and local rules) by Defendant HMC/CAH;
2. All unproduced documents responsive to ESS's First Requests for Production issued to CAH 1, CAH 10, and CAH 16 and otherwise required to be produced by all

---

[1] The Defendants include Defendant CAH Acquisition Company #1, LLC d/b/a Washington County Hospital ("CAH-Washington"); Defendant CAH Acquisition Company #10, LLC d/b/a Yadkin Valley Community Hospital ("CAH-Yadkin"); Defendant CAH Acquisition Company #16, LLC d/b/a Haskell County Community Hospital ("CAH-Haskell"), and Defendant HMC/CAH, Inc. ("HMC/CAH") (collectively, "Defendants").

[2] John Hafen's November 11, 2014 demand letter is attached hereto as Exhibit B and Charles Gearing's March 12, 2015 demand letter is attached hereto as Exhibit C.

**PLAINTIFF'S MOTION FOR SANCTIONS – Page 1**

Defendants pursuant to the Court's discovery control order and the Eastern District's local rules.

The Defendants' meager production thus far indicates that Defendants have failed to produce relevant documents. CAH 10 produced a spreadsheet, attached hereto as <u>Exhibit A</u>, which contains figures that may have formed the basis for one of CAH 10's many misrepresentations to ESS. ESS has sought other spreadsheets like <u>Exhibit A</u> related to the Defendants' other misrepresentations to ESS at issue in this case. ESS has also sought all correspondence among and between the Defendants concerning these spreadsheets, the Defendant's misrepresentations, and ESS. Lastly, ESS has sought specific documents delineated below that are directly relevant to claims and defenses at issue in this case.

Defendants' evasive discovery responses suggest that Defendants have destroyed or withheld relevant information and documents. Indeed, Defendants' counsel recently indicated that Defendants may have withheld information required to be produced under the above-listed orders and rules. ESS thus seeks sanctions, including but not limited to attorney fees, an order deeming that certain facts alleged by ESS are deemed established as a matter of law, a finding that Defendant HMC/CAH is jointly and severally liable with the other Defendants, and an order prohibiting the Defendants from offering all documents and witnesses not disclosed or produced before the discovery deadline in this matter. The Court may issue such orders to punish Defendants for their discovery violations and to ensure future compliance.

## II.
## ARUGMENTS AND AUTHORITIES

**A.     Defendants have failed to meet their obligation to produce various specific categories of documents**

Defendants have failed to comply with the Court's discovery control order and the local rules, which mandate the production of <u>all</u> documents "<u>relevant to the claim or defense of any</u>

party," including documents that include known and potential deponents, information that would *not* support a party's claim, and even information that deserves to be considered in the preparation or evaluation of a claim or defense.[3] These requirements supplement the basic disclosure requirements of FRCP 26 and are intended to cause parties to make broad, plenary productions to avoid discovery disputes.

> *i. In an apparent effort to evade their discovery obligations, Defendants' counsel has advocated a more narrow interpretation of the Defendants' obligations*

Plaintiff has demanded Defendant's full compliance with the Court's orders and rules, and Plaintiff has also submitted several specific requests and demands for more specific categories of documents and information. Specifically, ESS has sought documents relevant to the alleged fraudulent misrepresentations by Defendants that ESS relied upon to determine the terms of the agreements executed by ESS and the Defendants. Defendant CAH 10's spreadsheet, attached as Exhibit A, appears to relate specifically to Plaintiff's claims, but it is not accompanied by any other similar spreadsheets or communications about the spreadsheet or the figures contained therein. Defendant has claimed repeatedly that it cannot recall information or locate documents relevant to these misrepresentations.

But Defendants' counsel's recent April 13, 2015 letter indicates otherwise. As a part of Plaintiff's conference with Defendants' counsel concerning this motion, Defendant's counsel claimed that, ***despite*** reviewing Plaintiff's discovery requests and again reviewing "the local rules, the [Court's] case management control order, and the Federal Rules regarding Initial Disclosures," she believed that "this is the first time" that Plaintiff had requested "all data from this time period that may have been used to compile the values on the Prospective Client Profile"

---

[3] *See* Local Rule CV-26(d)(1)-(5).

**PLAINTIFF'S MOTION FOR SANCTIONS – Page 3**

completed by Defendants and submitted to Plaintiff.[4] But that is not true—Defendants were obligated by the Local Rules *from the start of discovery* to produce "all data…that may have been used," as it is relevant to a claim or defense in this case. Further, Plaintiff has *specifically requested* this information from Defendants on multiple occasions. Counsel's representation in her April 13, 2015 letter, however, indicates that the Defendants have previously disobeyed and misconstrued the very clear production obligations imposed on the parties by the rules and orders governing this case.

> ii. *Third party affidavit testimony indicates Defendants have not produced responsive documents and information in their possession*

Upon the close of discovery in this matter in mid-March 2015, and the Defendants' accompanying failure to produce documents and information Plaintiff suspected were in Defendants' possession, Plaintiff sought out Harley Smith, the former CEO of Defendant CAH-Washington. Mr. Smith's affidavit testimony indicates that the Defendants have withheld or destroyed documents relevant to Plaintiff's fraud claims. Mr. Smith testifies in his affidavit, attached hereto as Exhibit E, that someone from Defendant HMC/CAH, the parent company of CAH-Washington and the other Defendant hospitals, provided Mr. Smith with "data that allowed [him] to compile the Requested Information for ESS."[5] Defendants have thus far claimed, however, that they could not recall or locate that information. So at least one of the following is true: Defendants are guilty of spoliation and have destroyed these relevant documents, or Defendants have withheld these responsive documents in their possession.

---

[4] See Exhibit D, Buffy Klein letter to John Hafen dated April 13, 2015.
[5] See Affidavit of Harley Smith, attached hereto as Exhibit E, at ¶ 6.

**PLAINTIFF'S MOTION FOR SANCTIONS – Page 4**

Further, the testimony of Mr. Smith is corroborated by filings made by Defendants in the Western District of Missouri in which Defendants concede that it was HMC/CAH that "selected and negotiated with ESS" and provided "some portion of the information" to ESS.[6]

### iii. *Defendants should have produced documents related to Defendants' misrepresentations*

As explained above, Plaintiff brings claims for fraud related to misrepresentations made by the Defendants to Plaintiff. Defendant CAH 10's spreadsheet, attached as Exhibit A, appears to relate specifically to Plaintiff's claims, but it is not accompanied by any other similar spreadsheets or communications about the spreadsheet or the figures contained therein. These other documents must exist or they must have been destroyed or withheld by Defendants without justification. The figures contained on page 2 of Exhibit A appear to match numbers contained in a Prospective Client Profile[7] sent by Defendants to ESS that serve as the basis for ESS's fraud claim and other claims. ESS used this Prospective Client Profile, and other similar Profiles at issue in this case, to set various key terms for ESS's agreement with the Defendants. Exhibit A's figures relate to the mix of payers (insurers, Medicare, Medicaid, etc.) that paid into CAH 10 prior to ESS's work with CAH 10. But ESS claims that the Defendants misrepresented *several other figures* contained in the Prospective Client Profile, including the Acuity Mix figures on page 3 of the Profile and other figures listed on page 2 of the profile, including the number of annual and monthly patient visits. Defendants have produced **_no_** documents or communications related to these other figures.

When Defendants failed to produce such documents with their initial disclosures, ESS issued specific document requests seeking these documents. Defendants still have not produced

---

[6] *See* Exhibit A-1 to Hafen Affidavit at pp. 1538, 1548 and 1552, attached to Plaintiff's Response and Brief in Opposition to Defendant HMC/CAH Consolidated, Inc.'s Motion for Summary Judgment (Dkt. #48)
[7] The Prospective Client Profile that is the subject of Plaintiff's claims is attached hereto as Exhibit F.

**PLAINTIFF'S MOTION FOR SANCTIONS – Page 5**

any documents related to these other figures related to CAH 10's Profile or CAH 1's Profile. Specifically, Defendants have failed to produce the following categories of documents related to specific misrepresentations by Defendants to ESS:

**Relating solely to CAH 1:**

1. Any and all documents or information used or relied upon to calculate the "Current ED Payer Mix" values provided by Defendants on the document titled Prospective Client Profile, dated February 29th, 2012, and identified in documents previously produced as Bates Label# ESS/CAH 1 – 000479 through 000483. Specific values for "Current ED Payer Mix" are identified in document Bates Label# ESS/CAH 10 – 000482.

2. Any and all documents or information used or relied upon to calculate the "Annual ED Patient Visits" value provided by Defendants on the document titled Prospective Client Profile, dated February 29th, 2012, and identified in documents previously produced as Bates Label# ESS/CAH 1 – 000479 through 000483. The specific value for "Annual ED Patient Visits" is identified in document Bates Label# ESS/CAH 10 – 000481.

3. Any and all documents or information used or relied upon to calculate the "ED Patients Admitted" percentage value provided by Defendants on the document titled Prospective Client Profile, dated February 29th, 2012, and identified in documents previously produced as Bates Label# ESS/CAH 1 – 000479 through 000483. The specific value for "ED Patients Admitted" is identified in document Bates Label# ESS/CAH 10 – 000481.

4. Any and all documents or information used or relied upon to calculate the "Acuity Mix by Evaluation & Management Code" values provided by Defendants on the document titled Prospective Client Profile, dated February 29th, 2012, and identified in documents previously produced as Bates Label# ESS/CAH 1 – 000479 through 000483. Specific values for "Acuity Mix by Evaluation & Management Code" are identified in document Bates Label# ESS/CAH 10 – 000482.

5. Any and all documents or information used or relied upon to calculate the "Current ED Payer Mix" values provided by Defendants on the document titled Start Up: Client Profile, dated April 10th, 2012, and identified in documents previously produced as Bates Label# ESS/CAH 1 – 000339 through 000351. Specific values for "Current ED Payer Mix" are identified in document Bates Label# ESS/CAH 10 – 000341.

6. Any and all documents or information used or relied upon to calculate the "Annual ED Patient Visits" value provided by Defendants on the document titled Start Up: Client Profile, dated April 10th, 2012, and identified in documents previously produced as Bates Label# ESS/CAH 1 – 000339 through 000351. The specific value for "Annual ED Patient Visits" is identified in document Bates Label# ESS/CAH 10 – 000340.

7. Any and all documents or information used or relied upon to calculate the "ED Patients Admitted" percentage value provided by Defendants on the document titled Start Up: Client Profile, dated April 10th, 2012, and identified in documents previously produced as Bates Label# ESS/CAH 1 – 000339 through 000351. The specific value for "ED Patients Admitted" is identified in document Bates Label# ESS/CAH 10 – 000340.

**Relating solely to CAH 10:**

8. Any and all documents or information used or relied upon to calculate the "Current ED Payer Mix" values provided by Defendants on the document titled Prospective Client Profile, dated February 28th, and identified in documents previously produced as Bates Label# ESS/CAH 10 – 000180 through 000186. Specific values for "Current ED Payer Mix" are identified in document Bates Label# ESS/CAH 10 – 000186.

9. Any and all documents or information used or relied upon to calculate the "Annual ED Patient Visits" value provided by Defendants on the document titled Prospective Client Profile, dated February 28th, and identified in documents previously produced as Bates Label# ESS/CAH 10 – 000180 through 000186. The specific value for "Annual ED Patient Visits" is identified in document Bates Label# ESS/CAH 10 – 000185.

10. Any and all documents or information used or relied upon to calculate the "ED Patients Admitted" percentage value provided by Defendants on the document titled Prospective Client Profile, dated February 28th, and identified in documents previously produced as Bates Label# ESS/CAH 10 – 000180 through 000186. The specific value for "ED Patients Admitted" is identified in document Bates Label# ESS/CAH 10 – 000185.

11. Any and all documents or information used or relied upon to calculate the "Acuity Mix by Evaluation & Management Code" values provided by Defendants on the document titled Prospective Client Profile, dated February 28th, and identified in documents previously produced as Bates Label# ESS/CAH 10 – 000180 through 000186. Specific values for "Acuity Mix by Evaluation & Management Code" are identified in document Bates Label# ESS/CAH 10 – 000186.

### iv. *Documents due under the local rules and the Court's discovery control order*

As stated above, Defendants have failed to meet their obligation under the Eastern District's local rules, which impose wide obligations on parties to produce documents relevant to any claim or defense. ESS made previous demands for the following basic, and obviously relevant, categories of documents that the Defendants have failed to produce:

1. Any and all agreements between ESS and any of the Defendants.

2. Documents and correspondence relating to the termination of any and all agreements described in the foregoing sentence.

3. Documents and correspondence supporting and/or relating to Defendants' assertion of a mutually agreed termination of the June 1 Agreement and August 1 Agreement.

4. Documents and correspondence supporting and/or relating to Defendants' equitable estoppel claims, as provided for in Count II of CAH Acquisition et al Answer to Plaintiff's Fourth Amended Complaint.

5. Documents and correspondence relating to ESS' performance of the agreements described in #1, specifically relating the accusations in Paragraph 24 of CAH Acquisition et al Answer to Plaintiff's Fourth Amended Complaint.

6. Any and all documents reflecting payments or invoices between Defendants and ESS.

These categories of documents are clearly relevant and should have been produced by the Defendants under the local rules, as they relate either to inextricable facts or to claims and defenses asserted by the parties.

### v. *Defendant HMC/CAH clearly owes disclosures to ESS*

Defendant HMC/CAH received service of process in this case on October 16, 2014. Federal Rule of Civil Procedure ("FRCP") 26(a)(1)(D) requires a party served or joined after the FRCP 26(f) conference to make initial disclosures within thirty (30) days after they are served or joined. HMC/CAH has not, at the time of this filing, submitted any initial disclosures under FRCP 26. HMC/CAH's disclosures are over four months overdue, and HMC/CAH even failed to submit its disclosures before the close of discovery in this case on Monday, March 23, 2015.

HMC/CAH's failure to serve disclosures has caused Plaintiff extreme prejudice in this case. To illustrate the problem with HMC/CAH's failure to serve disclosures and produce documents, HMC/CAH now seeks summary judgment and relies entirely on an affidavit of an undisclosed witness to support its motion.[8] HMC/CAH has failed to produce a single document

---

[8] *See* Defendant HMC/CAH Consolidated, Inc.'s Motion for Summary Judgment and Brief in Support (Dkt. #44).

**PLAINTIFF'S MOTION FOR SANCTIONS** – **Page 8**

that would allow ESS to corroborate or contradict the affidavit testimony of the undisclosed witness.

> B. **The Court should impose sanctions, including spoliation sanctions, to punish Defendants' discovery violations**

Defendants' above-described discovery violations merit the imposition of sanctions on Defendants, including an order that they pay ESS's attorney fees and costs incurred in pursuing the deficient discovery and in seeking this motion. Greater sanctions, however, are necessary. Defendants have submitted troubling responses to several discovery requests from Plaintiff, submitting the following form answers to many of Plaintiff's requests:

Response to Plaintiff's First Request for Production:

> Because of the passage of time and the loss of employees, the Hospital cannot, with the exception of the documents attached to this response, identify any document, to any degree of certainty, that it can currently state it used or relied upon to calculate the information. To the best of the Hospital's recollection, requests for information were made orally and most, if not all, of the responses were also provided orally. The Hospital cannot currently identify the person who provided the information or identify the documents other than the attached that may have the provided information.[9]

Response to Plaintiff's Second Set of Interrogatories:

> Defendants responded to a questionnaire in February 2012 and they cannot, at this time, state with any certainty how the hospital compiled or calculated the information. Defendants (sic) best recollection is that the CEO requested an administrative employee retrieve or gather the information and that the information was then provided to the hospital CEO. The employees have not worked at the hospital for years.[10]

Defendants' evasive answers are merely a dodge and excuse not to respond to ESS's discovery. They indicate that Defendant may be relying on the passage of time as an excuse not to produce relevant information. Despite the absence of employees, Defendants possess emails from the relevant time period, as reflected by emails *already produced* by Defendants.[11] Further,

---

[9] See Response to Plaintiff's First Request for Production attached as <u>Exhibit G</u>.
[10] See Response to Plaintiff's Second Set of Interrogatories attached as <u>Exhibit H</u>.
[11] See examples of documents produced by Defendants attached as <u>Exhibit I</u>.

**<u>PLAINTIFF'S MOTION FOR SANCTIONS</u> – Page 9**

they have produced Exhibit A which contains data from the relevant time period. Further, Defendants' counsel's recent letter and Harley Smith's recent affidavit testimony indicate that Defendants have knowingly flouted the Court's orders and rules for discovery.

ESS respectfully requests that the Court impose harsh sanctions available to a Court to enforce its orders. For instance, to punish Defendants' discovery violations, the Court may order that matters asserted by ESS will be established as a matter of law at trial. See *Insurance Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706-707 (1982). The Court may also prevent the Defendants from supporting or opposing certain claims related to the discovery violations. See FRCP 37(b)(2)(A)(ii). If the Defendants' noncompliance was both unjustified and harmful to ESS, the Court should exclude evidence the Defendants may introduce to support or oppose claims at issue in this case. *Grajales-Romero v. American Airlines, Inc.*, 194 F.3d 288, 297 (1st Cir. 1999); *Newman v. GHA Osteopathic, Inc.*, 60 F.3d 153, 156 (3rd Cir. 1995).

ESS respectfully requests that the Court enter an order making the following findings to punish Defendants for their discovery violations:

1. Defendants' equitable estoppel claims are overruled and otherwise denied;

2. Defendants CAH 1 and CAH 10 made fraudulent misrepresentations to ESS regarding the Compensation Variables, including the following:

   a) the "Current ED Payer Mix" values provided by CAH 1 on its Prospective Client Profile;
   b) the "Annual ED Patient Visits" value provided by CAH 1 on its Prospective Client Profile;
   c) the "ED Patients Admitted" percentage value provided by CAH 1 on its Prospective Client Profile;
   d) the "Acuity Mix by Evaluation & Management Code" values provided by CAH 1 on its Prospective Client Profile;
   e) the "Current ED Payer Mix" values provided by CAH 1 on its Prospective Client Profile;

f) the "Annual ED Patient Visits" value provided by CAH 1 on its Prospective Client Profile;

g) the "ED Patients Admitted" percentage value provided by CAH 1 on its Prospective Client Profile;

h) the "Current ED Payer Mix" values provided by CAH 10 on its Prospective Client Profile;

i) the "Annual ED Patient Visits" value provided by CAH 10 on its Prospective Client Profile;

j) the "ED Patients Admitted" percentage value provided by CAH 10 on its Prospective Client Profile; and

k) the "Acuity Mix by Evaluation and Management Code" values provided by CAH 10 on its Prospective Client Profile.

3. Defendants CAH 1 and CAH 10 knew their misrepresentations were false or they made the misrepresentations recklessly;

4. Defendants CAH 1 and CAH 10 made the misrepresentations with the intent that ESS would rely on them in negotiating the compensation to be paid under the agreements;

5. ESS relied on Defendants CAH 1 and CAH 10's fraudulent misrepresentations; and

6. Defendants CAH 1 and CAH 10 fraudulently induced ESS into entering into agreements with them.

ESS further requests that the Court exclude all witnesses and exhibits not disclosed or produced prior to the discovery deadline.

## III.
## REQUEST FOR HEARING

Plaintiff respectfully requests that the Court grant it a hearing on this Motion for Sanctions under Local Rule CV-7(g).

# IV.
# REQUEST FOR RELIEF

ESS respectfully requests that the Court enter an order making the following findings as a matter of law:

1. Defendants' equitable estoppel claims are overruled and otherwise denied;

2. Defendants CAH 1 and CAH 10 made fraudulent misrepresentations to ESS regarding the Compensation Variables, including the following:

    a) the "Current ED Payer Mix" values provided by CAH 1 on its Prospective Client Profile;
    b) the "Annual ED Patient Visits" value provided by CAH 1 on its Prospective Client Profile;
    c) the "ED Patients Admitted" percentage value provided by CAH 1 on its Prospective Client Profile;
    d) the "Acuity Mix by Evaluation & Management Code" values provided by CAH 1 on its Prospective Client Profile;
    e) the "Current ED Payer Mix" values provided by CAH 1 on its Prospective Client Profile;
    f) the "Annual ED Patient Visits" value provided by CAH 1 on its Prospective Client Profile;
    g) the "ED Patients Admitted" percentage value provided by CAH 1 on its Prospective Client Profile;
    h) the "Current ED Payer Mix" values provided by CAH 10 on its Prospective Client Profile;
    i) the "Annual ED Patient Visits" value provided by CAH 10 on its Prospective Client Profile;
    j) the "ED Patients Admitted" percentage value provided by CAH 10 on its Prospective Client Profile; and
    k) the "Acuity Mix by Evaluation and Management Code" values provided by CAH 10 on its Prospective Client Profile.

3. Defendants CAH 1 and CAH 10 knew their misrepresentations were false or they made the misrepresentations recklessly;

4. Defendants CAH 1 and CAH 10 made the representations with the intent that ESS would rely on them in negotiating the compensation to be paid under the agreements;

5. ESS relied on Defendants CAH 1 and CAH 10's fraudulent misrepresentations; and

6. Defendants CAH 1 and CAH 10 fraudulently induced ESS into entering into agreements with them.

ESS further requests that the Court exclude all witnesses and exhibits not disclosed or produced prior to the discovery deadline. ESS also respectfully requests an order compelling Defendants to pay all attorney fees and court costs ESS incurred in pursuit of the deficient discovery and in pursuit of this motion and requests that the Court provide ESS ten days to submit evidence in support of the amount of attorney fees incurred.

In the alternative or in addition to the above-requested relief, ESS respectfully requests that the Court reopen discovery for the limited purpose of Plaintiff pursuing additional discovery related to the information and documents that Defendants failed to produce, grant Plaintiff leave to amend its pleadings based on additional findings of Plaintiff and enter an order compelling the production of the following documents within seven (7) days of the entry of the order:

1. Documents and correspondence relating to the termination of any and all agreements at issue in this case.
2. Any and all documents, correspondence or information used or relied upon to calculate the information provided by Defendants in the documents titled Prospective Client Profile.
3. Any and all documents, correspondence or information that could be used to corroborate the accuracy of the information provided by Defendants in the documents titled Prospective Client Profile.
4. Any and all documents relevant to the claim asserted by HMC/CAH.

Lastly, ESS requests any and all other relief to which it may be entitled.

Respectfully submitted,

/s/ John M. Hafen
John M. Hafen
Texas State Bar No. 24057879
jmh@hanshawkennedy.com
Charles M. Gearing
Texas State Bar No. 24069774
cmg@hanshawkennedy.com
David R. Wortham, Jr.
Texas State Bar No. 24093392
drw@hanshawkennedy.com

**HANSHAW KENNEDY, LLP**
1415 Legacy Drive, Suite 350
Frisco, Texas 75034
Telephone: (972) 731-6500
Telecopier: (972) 731-6555

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that:

(1) I have complied with the meet and confer requirement in Local Rule CV-7(h);

(2) this motion is opposed by counsel for the Defendants;

(3) the personal conference between the parties occurred on April 10, 2015 between John Hafen, lead attorney for Plaintiff, and Buffey Klein, lead attorney for all Defendants;

(4) Mr. Hafen and Ms. Klein conferred again on April 15th, 2015 prior to the filing of this Motion.

(5) No agreement could be reached because Defendants opposed the sanctions requested herein and because the parties had differing opinions as to the discovery obligations of Defendants, and

(6) the discussions between lead counsel have ended in an impasse, leaving open issues for the court to resolve.

/s/ John M. Hafen

**PLAINTIFF'S MOTION FOR SANCTIONS – Page 14**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 15, 2015 all counsel of record were served with a copy of the forgoing PLAINTIFF'S MOTION SANCTIONS by the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                                          /s/ John M. Hafen